**BURSOR & FISHER**
P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
**www.bursor.com**

PHILIP L. FRAIETTA
Tel: **646.837.7150**
Fax: **212.989.9163**
pfraietta@bursor.com

December 8, 2022

<u>*Via ECF*</u>

The Honorable Andrew L. Carter, Jr.
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

*Re:* *Lamb v. Forbes Media LLC*, Case No. 1:22-cv-06319-ALC (S.D.N.Y.)

Dear Judge Carter,

      I represent Plaintiff Joseph Lamb ("Plaintiff") in the above-referenced action. I write pursuant to Rule 2.A of your Honor's Individual Practices to respond to Forbes Media LLC's ("Forbes" or "Defendant") December 5, 2022 letter requesting a pre-motion conference on its anticipated motion to dismiss (ECF No. 17) ("Ltr."). Plaintiff will oppose Defendant's motion to dismiss.

    **I.**    **Background**

      Plaintiff brings this suit against Defendant for knowingly disclosing his personally identifiable information ("PII") and video-viewing behavior to a third party, Facebook. By doing so, Defendant violated the Video Privacy Protection Act ("VPPA"). Defendant develops, owns, and operates a website, forbes.com, that "hosts and delivers thousands of videos, featuring them as standalone content and embedding them into articles." ECF No. 15, at ¶¶ 2, 15 ("FAC"). As alleged in the FAC, Defendant, through the Facebook Tracking Pixel, transmits four separate events which allow Facebook to identify the PII and video-viewing behavior of Plaintiff and every other subscriber to Forbes' website who watches videos. *Id.* ¶¶ 18-22.

      This case is one of many similar VPPA cases brought throughout the country pertaining to the Facebook Tracking Pixel. To date, numerous courts, including Judge Hellerstein, have denied motions to dismiss similar to Defendant's anticipated motion, and no court has granted such a motion. *See Czarnionka v. Epoch Times Ass'n*, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373 (S.D.N.Y. Sept. 19, 2022); *Stark v. Patreon, Inc.*, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022); *Lebakken v. WebMD, LLC*, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022).

    **II.**    **Plaintiff Has Article III Standing**

      Defendant argues that Plaintiff lacks Article III standing as a factual matter because he allegedly "registered for the Forbes website eleven days before" bringing this case and allegedly

"never watched a video on the website." Ltr. at 1-2. But that is untrue. As alleged in the FAC, Plaintiff subscribed to the Forbes website in 2018 via the Facebook button and has watched numerous videos on the site. *See* FAC ¶¶ 49-52. Plaintiff is prepared to submit a sworn declaration attesting to these facts along with an exhibit that verifies he created a Forbes account in 2018.[1]

**III.   Forbes Is A Video Tape Service Provider**

Defendant argues that it is not a "video tape service provider" within the meaning of the VPPA. Ltr. at 2-3. That argument was rejected in every similar case to raise it. *See Czarnionka*, 2022 WL 17069810, at *4; *Ambrose*, 2022 WL 4329373, at *2; *Stark*, 2022 WL 7652166, at *6-7. The VPPA broadly defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). And here, Plaintiff alleges that Defendant does just that. FAC ¶ 68. Nothing more is required. *See Czarnionka*, 2022 WL 17069810, at *4; *Ambrose*, 2022 WL 4329373, at *2; *Stark*, 2022 WL 7652166, at *6-7.

**IV.   Plaintiff Adequately Alleges That Defendant Disclosed His PII To Facebook**

Defendant argues that Plaintiff fails to adequately allege that it disclosed his PII because he does not "allege[] facts making it plausible that any of the cookies at issue would enable an ordinary person to identify an individual has having watched specific videos." *See* Ltr. 3. That is wrong. The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). As Judge Hellerstein noted in *Czarnionka*, the Facebook ID "itself represents a particular individual." 2022 WL 17069810, at *3; *see also Lebakken*, 2022 WL 16716151, at *4 ("[T]he Court finds that Lebakken adequately alleged that WebMD disclosed her Facebook ID and email address in connection with her video viewing information to Facebook and that the disclosure of such information constituted a disclosure of PII, supporting a plausible claim under the VPPA.").

---

[1] Although Plaintiff's claims have merit, his counsel has also recently been retained by another Forbes subscriber who had her personally identifiable information disclosed to Facebook. Plaintiff intends to amend the complaint to add this individual's allegations. *See In re National Australia Bank Securities Litig.*, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006) ("[C]ourts not only may, but *should*, respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative."); *see also Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 201 (E.D.N.Y. 2005) ("Leave to amend will generally be granted where the moving party has demonstrated 'at least colorable grounds for relief' absent a showing of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party by virtue of the allowance of the amendment, or futility of the amendment.")

Here, as in *Czarnionka* and *Lebakken*, Plaintiff alleges that Defendant disclosed unencrypted Facebook IDs to Facebook. *See* FAC ¶¶ 24-28, 32-34. Plaintiff also alleges that when a subscriber visits a page on its website, Defendant discloses "the Uniform Resource Locator ('URL') accessed, along with whether that webpage features a video." *Id.* ¶¶ 18-23. And although not required, Plaintiff also alleges that Defendant "discloses a subscriber's email address, first name and last name." *Id.* ¶ 40. Plaintiff clearly adequately alleges disclosures of his PII to Facebook.

Defendant offers no persuasive rebuttal. Defendant cites to *Wilson v. Triller, Inc.*, 2022 WL 1138073 (S.D.N.Y. Apr. 18, 2022) but that case is easily distinguishable. In *Wilson*, the plaintiff alleged that the defendant disclosed "anonymized unique identifiers assigned the each user." *Id.* at *1, *5. Here, by contrast, the unique Facebook IDs are not anonymized. They can simply be appended to the end of Facebook.com to generate a wealth of information about a unique individual. *See* FAC ¶ 33; *Czarnionka*, 2022 WL 17069810, at *1 ("The [Facebook ID], when entered into a web browser in a specific format ('facebook.com/[Facebook ID]'), can be used to navigate to the Facebook profile of the particular person associated with that [Facebook ID].").

### V.     Defendant Disclosed Plaintiffs' PII Knowingly

Finally, Defendant argues that that Plaintiff "fails to adequately allege a *knowing* disclosure as required by the VPPA." Ltr. at 3. That is also wrong. A defendant discloses PII knowingly when it possesses "consciousness of transmitting the private information." *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). Here, as explained in *Czarnionka* and *Lebakken*, Plaintiff alleges that Defendant "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." FAC ¶¶ 42-43; *see also Czarnionka*, 2022 WL 17069810, at *4; *Lebakken*, 2022 WL 16716151, at *4-5. Indeed, the allegations in the FAC make clear that Defendant did not accidentally incorporate the Facebook Tracking Pixel onto its website, but rather used the data derived from the Facebook Tracking Pixel to build "Audiences" that it could later retarget. FAC ¶¶ 10-12. Defendant also "control[led] what actions … the Facebook Tracking Pixel will collect," along with "how the Facebook Tracking Pixel identifies visitors." *Id.* ¶¶ 13-14. This conclusively shows knowledge.

Defendant tries to evade these well-plead allegations by arguing that Plaintiff lacks "allegations that Forbes had actual knowledge that Facebook would combine the information received from the browser relating to the individual with the video title." Ltr. at 3. But such an allegation is not required. As Judge Hellerstein explained, "Plaintiff has plausibly alleged that the [Facebook ID] itself constituted PII. Knowledge of what Facebook might do with the disclosed information to yield PII is therefore unnecessary." *Czarnionka*, 2022 WL 17069810, at *4; *Lebakken*, 2022 WL 16716151, at *5 (same).

BURSOR&FISHER
P.A.

PAGE 4

Very truly yours,

Philip L. Fraietta

CC: All counsel of record (via ECF)