# BURSOR & FISHER
## P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
www.bursor.com

PHILIP L. FRAIETTA
Tel: **646.837.7150**
Fax: **212.989.9163**
pfraietta@bursor.com

January 26, 2023

*Via ECF*

The Honorable Andrew L. Carter, Jr.
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re: *Lamb v. Forbes Media LLC*, Case No. 1:22-cv-06319-ALC (S.D.N.Y.)

Dear Judge Carter,

    I represent Plaintiff Joseph Lamb and Amber Stouffe ("Plaintiffs") in the above-referenced action. I write pursuant to Rule 2.A of your Honor's Individual Practices to respond to Forbes Media LLC's ("Forbes" or "Defendant") January 23, 2023 letter requesting a pre-motion conference on its anticipated motion to dismiss (ECF No. 23) ("Ltr."). Plaintiffs will oppose Defendant's motion.

## I. Background

    Plaintiffs bring this suit against Defendant for knowingly disclosing their personally identifiable information ("PII") and video-viewing behavior to a third party, Facebook. By doing so, Defendant violated the Video Privacy Protection Act ("VPPA"). Defendant develops, owns, and operates a website, forbes.com, that "hosts and delivers thousands of videos, featuring them as standalone content and embedding them into articles." ECF No. 15, at ¶¶ 2, 15 ("SAC"). As alleged in the SAC, Defendant, through the Facebook Tracking Pixel, transmits four separate events which allow Facebook to identify the PII and video-viewing behavior of Plaintiffs and every other subscriber to Forbes' website who watches videos. *Id.* ¶¶ 18-22.

    This case is one of many similar VPPA cases brought throughout the country pertaining to the Facebook Tracking Pixel. To date, numerous courts, including Judge Hellerstein, have denied motions to dismiss similar to Defendant's anticipated motion, and no court has granted such a motion. *See Czarnionka v. Epoch Times Ass'n*, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373 (D. Mass. Sept. 19, 2022); *Stark v. Patreon, Inc.*, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022); *Lebakken v. WebMD, LLC*, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022).

## II. Plaintiffs Have Article III Standing

    Defendant argues that Plaintiffs lack Article III standing, stating that it will submit declarations showing "that Plaintiffs' allegations about their interaction with Forbes are

demonstrably false." Ltr. at 1. But that is untrue. On December 21, 2022, Plaintiffs' counsel emailed documents to defense counsel verifying that Plaintiff Lamb created an account in 2018, reaffirming that Plaintiff Stouffe signed up for a newsletter in 2021, and demonstrating that Forbes disclosed Plaintiff Stouffe's website activity on at least sixty different occasions. Defense counsel never responded to that email, and rather than engage with these inconvenient facts, Defendant elects to regurgitate the same objections, going so far as to suggest that Plaintiffs have "manufactured" their injury. *See* Ltr. at 2. Defendant does this for a simple reason: it understands that, on the merits, every court to consider Defendant's rehashed positions has ruled against them. As alleged in the SAC, Plaintiffs are subscribers, and Defendant disclosed their PII to Facebook without their consent. *See* SAC ¶¶ 50-62. Plaintiffs thus have Article III standing, and they are prepared to submit sworn declarations attaching proof to reaffirm the same.

### III.  Forbes is a Video Tape Service Provider

Defendant argues that it is not a "video tape service provider" within the meaning of the VPPA. Ltr. at 2. That argument was rejected in every similar case to raise it. *See Czarnionka*, 2022 WL 17069810, at *4; *Ambrose*, 2022 WL 4329373, at *2; *Stark*, 2022 WL 7652166, at *6-7. The VPPA broadly defines "video tape service provider" as "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). And here, Plaintiffs allege that Defendant does just that. SAC ¶ 68. Nothing more is required. *See Czarnionka*, 2022 WL 17069810, at *4; *Ambrose*, 2022 WL 4329373, at *2; *Stark*, 2022 WL 7652166, at *6-7.

Defendant's counterpoints are meritless. Indeed, the best caselaw that Defendant can muster is no caselaw at all, instead pointing to a brief drafted by the Department of Justice in a related case. *See* Ltr. at 2. That tactic only underscores that the weight of judicial opinion stands firmly against Defendant's position.

### IV.  Plaintiff Stouffe is a Subscriber and Therefore a Consumer

Defendant argues that Plaintiff Stouffe has failed to allege that Defendant's newsletter "contained video content or linked to any dedicated video pages," or that "her engagement with the newsletter resulted in any third-party disclosure." Ltr. at 3. That argument overlooks the VPPA's straight-forward text. The VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider[.]" 18 U.S.C. § 2710(a)(1). The phrase "goods or services" has an ordinary, everyday meaning, and that meaning includes digital subscriptions and newsletters. *See Lebakken*, 2022 WL 16716151, at *3 (observing that "the phrase 'goods or services' is generally construed broadly to encompass 'all parts of the economic output of society,'" and holding that the plaintiff "plausibly pleaded that WebMD's e-newsletter constitutes a good or service"). While Defendant insists that the newsletter must either contain videos, link to videos, or result in third-party disclosures, the VPPA imposes no such requirement. *See id.* ("[T]he plaintiff must subscribe to 'goods or services from a video tape service provider,' not a video service as WebMD attempts to frame the issue.").

### V. Plaintiffs Adequately Allege Defendant Knowingly Disclosed Their PII To Facebook

Defendant argues that Plaintiffs fail to adequately allege that it disclosed their PII because the SAC "neither specifies which videos Plaintiffs watched, nor any facts demonstrating Forbes disclosed either of Plaintiffs' identities." *See* Ltr. 3. That is wrong. As Judge Hellerstein noted in *Czarnionka*, the Facebook ID "itself represents a particular individual." 2022 WL 17069810, at *3. Plaintiffs also allege that when a subscriber visits a page on its website, Defendant discloses "the Uniform Resource Locator ('URL') accessed, along with whether that webpage features a video." *Id.* ¶¶ 18-23. And although not required, Plaintiffs also allege that Defendant "discloses a subscriber's email address, first name and last name." *Id.* ¶ 40. Plaintiffs thus clearly allege Defendant disclosed their PII to Facebook.

Defendant then argues that Plaintiffs failed to allege that "they have suffered concrete injuries required to confer standing." Ltr. at 3. Numerous courts disagree. *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017) (observing that the VPPA protects "a consumer's *substantive* privacy interest in his or her video-viewing history" and the "*substantive* right to privacy … suffers any time a a video service provider discloses otherwise private information"); *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 677 (E.D. Mich. 2022) (reviewing claims brought under a state analog to the VPPA, finding that "*TransUnion* reinforces that Plaintiffs' [Michigan VPPA] claims have Article III standing").

Defendant next argues that "Plaintiffs fail to adequately allege a *knowing* disclosure as required by the VPPA." Ltr. at 3. This again runs head-first into the overwhelming weight of authority. *See Czarnionka*, 2022 WL 17069810, at *4 (rejecting identical argument with nearly identical allegations, holding that "Defendant's assertions are contradicted by the contents of the Complaint"); *Lebakken*, 2022 WL 16716151, at *4-5 (rejecting identical argument with nearly identical allegations).

### VI. Plaintiffs Never Consented to Any Disclosure

Defendant ends by arguing that "Plaintiffs consented to the disclosures described in the Privacy Statement by using the services." Ltr. at 3. This argument, like those before it, ignores the VPPA's plain text. The VPPA requires any consent to be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B). In other words, Defendant must "obtain the act of consent separately from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase." *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019). By only referencing its privacy policy, Defendant's argument must fail because "at no point does [it] contend that it provided consumers with a consent form dedicated *solely* to informing consumers of [its] intent to share their personally identifiable information with Facebook." *Id.* (emphasis in original).

Very truly yours,

*[signature]*

CC:   All counsel of record (via ECF)          Philip L. Fraietta