IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH LAMB and AMBER STOUFFE, )
individually and on behalf of all others )
similarly situated, )
 )
     Plaintiffs, )
 )
  v. )  Civil Action No. 1:22-CV-06319 (ALC)
 )
FORBES MEDIA LLC, )
 )
     Defendant. )
_____)

**MEMORANDUM OF LAW IN SUPPORT OF FORBES MEDIA, LLC'S
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT FACTS | 2 |
| III. | LEGAL STANDARDS | 3 |
| IV. | LEGAL ARGUMENT | 4 |
| | A. Plaintiffs Lack Article III Standing | 4 |
| | B. Plaintiffs Fail to Allege Facts to Support a VPPA Claim | 6 |
| | 1. Plaintiffs Fail to State a Claim Under The VPPA Because Forbes Is Not a Video Tape Service Provider. | 6 |
| | 2. The Information Allegedly Disclosed Is Not PII. | 7 |
| | 3. Plaintiffs Fail To Allege Forbes Knowingly Disclosed Their PII To A Third Party. | 10 |
| V. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................3

*Bandler v. Town of Woodstock*,
   832 F. App'x 733 (2d Cir. 2020) ................................................................................................5

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017) .....................................................................9, 10

*D'Ottavio v. Slack Techs.*,
   No. 1:18-cv-09082-NLH-AMD, 2022 U.S. Dist. LEXIS 232448 (D.N.J. Dec.
   27, 2022) .....................................................................................................................................5

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ......................................................................................................4

*Holland v. JPMorgan Chase Bank, N.A.*,
   2019 U.S. Dist. LEXIS 146553 (S.D.N.Y. Aug. 28, 2019) ........................................................5

*In re Hulu Priv. Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) .......................................................................................7

*Kimble v. Marvel Ent., LLC*,
   576 U.S. 446 (2015)...................................................................................................................8

*Makarova v. U.S.*,
   201 F.3d 110 (2d Cir. 2000)........................................................................................................3

*Martin v. Meredith Corporation et al.*,
   No. 1:22-cv-04776-DLC, ECF 57 (S.D.N.Y. Feb. 17, 2023) ........................................6, 7, 8, 9

*Nat. Res. Def. Council, Inc. v. U.S Food & Drug Admin.*,
   710 F.3d 71 (2d Cir. 2013).........................................................................................................5

*People v. Peque*,
   3 N.E.3d 617 (N.Y. 2013)..........................................................................................................8

*Raines v. Byrd*,
   521 U.S. 811 (1997)...................................................................................................................3

*Shields v. Professional Bureau of Collections of Maryland, Inc.*,
   55 F.4th 823 (10th Cir. Dec. 16, 2022) ...................................................................................4, 5

*Shipping Fin. Servs. Corp. v. Drakos*,
    140 F.3d 129 (2d Cir. 1998)......................................................................................3

*Spokeo, Inc. v. Robins* (*Spokeo I*),
    136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ...............................................................4

*Stark v. Patreon, Inc.*,
    No. 3:22-cv-03131-JCS, ECF 49 (N.D.Cal. Dec. 5, 2022)....................................6, 7

*Taylor v. Bernanke*,
    No. 13-CV-1013, 2013 WL 4811222 (E.D.N.Y. Sept. 9, 2013) .................................5

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................................4

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
    454 F. Supp. 2d 62 (E.D.N.Y. 2006) ...........................................................................5

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) ............................................................6

*Wilson v. Triller, Inc.*,
    598 F. Supp. 3d 82 (S.D.N.Y. 2022)...........................................................................9

**Statutes**

18 U.S.C. § 2710(a)(3)................................................................................................4, 7

18 U.S.C. § 2710(a)(4) ....................................................................................................6

18 U.S.C. § 2710(b)(1) .................................................................................................10

18 U.S.C. § 2710 *et seq.*.................................................................................................1

**Other Authorities**

H. Rep. No. 112-312 (2011) ...........................................................................................7

Rule 12(b)(6)........................................................................................................2, 3, 11

Rules 12(b)(1) .............................................................................................2, 3, 5, 11

S. REP. 100-599 ..............................................................................................................4

S. Rep. No. 112-258 (2012)............................................................................................7

U.S. CONST. Art. III, § 2 ........................................................................................3, 4, 5

## I. INTRODUCTION

Plaintiffs Joseph Lamb ("Lamb") and Amber Stouffe ("Stouffe") (each a "Plaintiff" and collectively, "Plaintiffs") have sued Forbes Media LLC ("Forbes") alleging violation of the Video Privacy Protection Act ("VPPA" or "the Act"), which limits the knowing disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video service provider" ("PII") about a "consumer" to third parties. 18 U.S.C. § 2710 *et seq*. However, as will be shown by the sworn declaration of Forbes' Chief Data Officer, neither Plaintiff has ever requested any video content from Forbes.[1] They have only requested written news articles. Thus, Plaintiffs lack standing as neither has been injured in any way recognizable under federal law. Indeed, given that Lamb registered for the Forbes website just days before he filed this highly-technical national class action, it is clear that any "injury" he suffered was manufactured for purposes of this suit.

Even if Plaintiffs had standing to sue (they do not), Plaintiffs do not state a claim:

- As confirmed by a recent United States Department of Justice filing, the VPPA simply does not apply to news organizations (like Forbes);

- No ordinary person could identify Plaintiffs and the videos they viewed, even if all factual allegations in the Second Amended Complaint ("Complaint") were true, hence the VPPA does not apply; and

- Plaintiffs' own Complaint alleges that Plaintiffs' browsers–not Forbes–sent information to Facebook, hence Forbes is not liable under the VPPA.

---

[1] On a factual challenge to standing, the defendant may submit and the court may consider evidence from outside the pleadings.

Forbes therefore moves for the immediate dismissal of the action, on multiple independently sufficient grounds under Rules 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a cause of action.

## II.     RELEVANT FACTS

Plaintiff Lamb filed the initial complaint in this action on July 26, 2022. On November 4, 2022 Plaintiff filed an Amended Complaint and on December 23, 2022, Plaintiff filed a Second Amended Complaint and added Stouffe as an additional plaintiff.

Lamb alleges that he registered for an account on the Forbes website in 2018 and that he frequented the Forbes website to watch videos. Complaint ¶¶ 50-53. Forbes searched its records multiple times against the email address for Plaintiff Lamb provided to Forbes by counsel for Plaintiffs. *See* Declaration of David Johnson at ¶ 4 ("Johnson Decl."). Those records show that Lamb registered for the Forbes website on July 14, 2022, twelve (12) days before bringing this suit. Johnson Decl. ¶ 5. Forbes' records also revealed that Lamb only selected written news articles and did not select any Forbes webpages dedicated solely to video content. *Id*.

Stouffe alleges that she "input her email" in November 2021 and that she frequented the Forbes website to watch videos. Complaint ¶¶ 57-60. Forbes searched its records multiple times against the email address for Plaintiff Stouffe provided by counsel for Plaintiffs. Johnson Decl. ¶ 7. The records show that on or about October 13, 2021, Stouffe signed up to receive emails from Forbes and on November 2, 2022, she registered for a Forbes account. *Id*. ¶ 8. On October 28, 2022, Stouffe accessed a single written news article that she found through a Google search. *Id*. Stouffe did not request or access any Forbes pages dedicated solely to video content.[2] *Id*. ¶ 9.

---

[2] Certain written news articles requested by Plaintiffs contained separate and independent dynamically generated videos randomly selected from the Forbes news library that automatically played on the page. Johnson Decl. ¶ 6. The dynamically generated videos change each time the news article is accessed and have a different title and URL

## III. LEGAL STANDARDS

Forbes moves to dismiss under Rule 12(b)(1). Article III limits federal court jurisdiction to actual "cases or controversies." U.S. CONST. Art. III, § 2. One element of this "bedrock requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citations and first internal quotation marks omitted). For a plaintiff to have standing, that plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. On a factual challenge to standing, the defendant may submit and the court may consider evidence from outside the pleadings. *See, e.g., Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff cannot simply rely on its pleadings. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

Forbes also moves to dismiss under Rule 12(b)(6). To defeat a Rule 12(b)(6) motion to dismiss, the complaint must contain "more than threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). The facts alleged, if true, must give rise to "more than a sheer possibility that a defendant has acted unlawfully". *Id*. at 678. Determining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Complaint fails this simple test many times over.

---

from the news article. *Id*. Plaintiffs did not select these videos, and in fact had no way of knowing any videos would appear on the page when they clicked on the written news article, or even if a video would play at all. *Id*. This is a further point of weakness of Plaintiffs' claims that will be explored further should the case survive this motion.

## IV. LEGAL ARGUMENT

### A. Plaintiffs Lack Article III Standing

Plaintiffs lack Article III standing because they have not alleged a concrete harm as required by *Spokeo, Inc. v. Robins* (*Spokeo I*), 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). For an injury to be concrete, it "must be 'de facto'; that is, it must actually exist." *Spokeo I*, 136 S. Ct. at 1548. The concrete right protected by the VPPA is "a context-specific extension of the substantive right to privacy". *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). Importantly, "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). The defendant must have disclosed, to a third party, some "video-viewing history" of an identified person (the plaintiffs). *Eichenberger*, 876 F.3d at 983. That third party must have actually seen the allegedly wrongful disclosure in order for a concrete harm to exist. *Shields v. Professional Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 829 (10th Cir. Dec. 16, 2022).

Congress passed the VPPA in 1988 directly in response to the publication of "a profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store." S. REP. 100-599 at *5. The VPPA was passed in the immediate aftermath of this episode to address the narrow issue of protecting the privacy of consumers around the selection of and home viewing of movies. The VPPA in fact only applies where what is disclosed "includes information which identifies a person as having requested or obtained *specific* video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added).

On the facts demonstrated by the declarations submitted in support of this motion, Plaintiffs have suffered no such concrete injury. Plaintiffs did not choose to view any video on the Forbes website. They selected only written news articles. Johnson Decl. ¶¶ 5, 8.

4

Since Plaintiffs did not request any videos from Forbes, Plaintiffs have suffered no Article III injury and have no standing to remain in federal court. *Cf. Shields*, 55 F.4th at 829 (finding no concrete injury for privacy purposes where there was no evidence that any third party actually saw personal information printed on the outside of a debt collection letter); *Holland v. JPMorgan Chase Bank, N.A.*, 2019 U.S. Dist. LEXIS 146553, at *19 (S.D.N.Y. Aug. 28, 2019) (granting dismissal of a Telephone Consumer Protection Act claim under Rule 12(b)(1) upon factual evidence that defendant did not make any calls to plaintiff).

Further, Lamb registering with Forbes on the eve of the filing of a federal class action lawsuit smacks of manufactured "injury". It is well settled that "a plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury." *Nat. Res. Def. Council, Inc. v. U.S Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013). *See also Bandler v. Town of Woodstock*, 832 F. App'x 733, 734, (2d Cir. 2020) ("To establish the traceability requirement of standing, a plaintiff must establish that the injury was not 'self-inflicted' or 'so completely due to the plaintiff's own fault as to break the causal chain.'"); *Taylor v. Bernanke*, No. 13-CV-1013, 2013 WL 4811222, at *10 n.5 (E.D.N.Y. Sept. 9, 2013) ("Self-inflicted injury that results from a plaintiff's personal choices rather than a defendant's conduct will not confer standing."); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury.").

Forbes reserves the right to conduct further discovery into whether the claims at issue were manufactured should this case survive the current motion in any form. *See, e.g.*, *D'Ottavio v. Slack Techs.*, No. 1:18-cv-09082-NLH-AMD, 2022 U.S. Dist. LEXIS 232448, at *10 (D.N.J. Dec. 27, 2022) (awarding defense costs as "the hours billed were a reasonable consequence of Plaintiff's

5

institution of this action and resulting investigations and motion practice, which Defendant has credibly asserted as stemming from an illegitimate, manufactured claim").

**B.      Plaintiffs Fail to Allege Facts to Support a VPPA Claim**

**1.      Plaintiffs Fail to State a Claim Under The VPPA Because Forbes Is Not a Video Tape Service Provider.**

Congress passed the VPPA in 1988 to protect consumer privacy in selecting and viewing movies. The Act restricts only video tape service providers, "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). Providing such video content must be "a focus of the defendant's work." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).

The name Forbes is synonymous around the world with news. Even Plaintiffs describe Forbes as a "global media, branding and technology company, *with a focus on news and information*". Complaint at ¶ 2 (emphasis added). Plaintiffs do not allege facts rendering it plausible that Forbes, a worldwide name in news, should be radically re-characterized as a video store or other retailer primarily engaged in providing entertainment content like that protected under the Act.

In a recent filing, the U.S. Department of Justice confirmed that the VPPA does not apply to news organizations. *Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS, ECF 49 (N.D.Cal. Dec. 5, 2022) ("*DOJ Brief*"), **Exhibit 1** hereto. The defendant in *Stark* raised a First Amendment challenge to the Constitutionality of the VPPA.[3] In defending the VPPA, the Department of Justice said that the VPPA "does not apply to news organizations, advocacy groups, or other entities

---

[3] The *Stark* defendant raised this constitutional challenge in a motion to dismiss. The Court denied defendant's motion to dismiss plaintiffs' VPPA claims on February 17, 2023, finding it premature to rule on the facial challenge of the Act. *See Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS, ECF 59 (N.D.Cal. Feb 17, 2023). *But see Martin v. Meredith Corporation et al.*, No. 1:22-cv-04776-DLC, ECF 57 (S.D.N.Y. Feb. 17, 2023) (granting defendant's motion to dismiss plaintiff's VPPA claim).

6

whose mission is to publicize information of public import." *DOJ Brief,* p. 11. Further, "the VPPA does not impose liability on any entity other than a 'video tape service provider' for revealing such information—including any news organization[.]" *Id*. at 18. This is an independently sufficient basis for dismissal of this Complaint in its entirety.

Legislative history supports the Department of Justice reading that the VPPA does not apply to news. The VPPA has been amended once, in 2013, to more specifically allow Internet-based advanced consent to disclosure. In connection with this Amendment, both the House Judiciary and Senate Judiciary issued reports to Congress that tied the scope of the Act to "**shar[ing] movie or TV show preferences**". *See* House Judiciary Committee report at H. Rep. No. 112-312, at 3 (2011) (emphasis added); Video Privacy Protection Act Amendments Act of 2012, Senate Judiciary Committee report at S. Rep. No. 112-258, at 3 (2012) (discussing application of the VPPA to "movie or television preferences"). *Cf. Martin v. Meredith Corporation et al*., No. 1:22-cv-04776-DLC, ECF 57 at p.14 (S.D.N.Y. Feb. 17, 2023) (dismissing claim against people.com under California-equivalent of VPPA "because there is no indication in the complaint that the defendants are engaged in the business of 'sales' or 'rental' of video materials.") attached as **Exhibit 2**.

**2.    The Information Allegedly Disclosed Is Not PII.**

The VPPA specifies that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). In order to plead this element, Plaintiffs must allege (1) that the information at issue is capable of identifying which videos Plaintiffs watched and (2) Defendant shared this information with a third party without Plaintiffs' consent. *See In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095, 1105 (N.D. Cal. 2015) ("The point of the VPPA, after all, is not so much to ban

the disclosure of user or video data; it is to ban the disclosure of information *connecting a certain user to certain videos*.") (emphasis added). Plaintiffs fail to sufficiently allege both points.

The Southern District of New York has confirmed—in a case with nearly identical facts—that in order to allege disclosure of information that identifies a plaintiff as having "requested or obtained specific video materials or services", the complaint must include specific information about the webpage at issue and the videos plaintiff watched. *See Meredith*, *supra*, at 13 (S.D.N.Y. Feb. 17, 2023) (granting defendant news outlet's motion to dismiss). The *Meredith* plaintiff brought VPPA claims against defendant Dotdash Meredith, operator of "news and media" website people.com, which publishes news articles online. *See* Complaint, *Martin v. Meredith*, No. 1:22-cv-04776-DLC, ECF 1 at ¶¶ 30-31, 54. Plaintiff in *Meredith* alleged he signed up for free email newsletters from people.com and that defendant disclosed video URLs and Facebook IDs to Facebook. *Compare* Forbes Complaint ¶¶ 2, 57-60 (bringing VPPA claims against news media company and online publisher of news articles for alleged sharing of video URLs and Facebook IDs to Facebook, in connection with a plaintiff's "subscription" to free email newsletters).[4]

"[S]imply disclosing the name of a webpage and an associated Facebook ID leaves off essential information for a VPPA claim". *Id.* at 9. Specifically, a complaint must include "at least: (1) whether the webpage contains a video; (2) if so, the name of the specific video materials on the page; (3) whether there are multiple videos on the page and, if so, which 'specific video materials' were requested or obtained by the website visitor; and (4) whether the website visitor 'requested or obtained' any videos at all, or instead **merely read an article on the webpage**." *Id.*

---

[4] Given the nearly identical factual allegations and legal claims, the Court should follow the precedent of *Meredith* to also dismiss the present case. Under the well-founded principle of stare decisis, a court's prior decisions "should stand as precedent[] for guidance in cases arising in the future" and should be "followed in subsequent cases presenting the same legal problem". *People v. Peque*, 3 N.E.3d 617 (N.Y. 2013). *See also Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015) ("[stare decisis] is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.") (internal quotations omitted).

at 9-10 (emphasis added). The *Meredith* Court rejected plaintiff's argument that alleging disclosure of a URL associated with a video on people.com was sufficient to state a VPPA claim, finding that "even for webpages including a video, sending the URL [is insufficient to identify a person] since the person may instead have merely reviewed an article on the page or opened the page and done nothing more." *Id.* at 12.

Here, the Complaint fails to satisfy any of these requirements with respect to either Plaintiff. Specifically, it does not: (1) identify a specific webpage Plaintiffs viewed containing a video; (2) name any specific videos on the page; (3) identify which videos Plaintiffs "requested or obtained"; or (4) allege whether Plaintiffs "requested or obtained" any specific videos at all. Instead, all they allege is that they each "frequented Forbes's website to, among other things, view videos." Complaint ¶¶ 52, 59. Plaintiffs' failure to allege the specific videos they watched is no surprise. As shown above, they accessed only written news articles on Forbes' website, and did not request any video content whatsoever. *See* Sec. II. In both *Meredith* and the present case, defendants hosted online news websites containing written news articles in addition to video materials, and plaintiffs failed to identify which videos they allegedly viewed. As in *Meredith*, Plaintiffs allege only that Forbes disclosed the name of a webpage URL and associated cookies containing their Facebook ID. *See* Complaint at ¶¶ 26, 53, 60. This is insufficient to identify Plaintiffs as having requested or obtained videos. *See Meredith*, at 9.

Moreover, Plaintiffs have not adequately alleged facts making it plausible that an ordinary person could identify an individual as having watched specific videos. *See Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91 (S.D.N.Y. 2022); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 3727230, at *8 (S.D.N.Y. Aug. 11, 2017). The cookies at issue (c_user, fr, and _fbp) contain

9

a visitor's unencrypted Facebook ID, consists of a string of numbers. *See* Complaint at ¶ 24, Figure 6.

**Figure 6**

| fr | 06vG76PmkbPzUxLM8... | .facebook.com |
|---|---|---|
| xs | 21%3ANWcv1qae6_Q... | .facebook.com |
| wd | 1005x927 | .facebook.com |
| c_user | 100035966074568 | .facebook.com |
| datr | nhkEYqJEsrPXFCfr7g54... | .facebook.com |
| sb | IJwCYtyFD-DWJjfFw3C... | .facebook.com |
| presence | C%7B%22t3%22%3A... | .facebook.com |
| _fbp | fb.1.1641423050382.6... | .forbes.com |

Plaintiffs suggest an "ordinary person" would know that a string of numbers from these cookies are actually a Facebook ID. Plaintiffs further assume an ordinary person would know to attach that opaque string of numbers to the end of the www.facebook.com URL, bringing them to the user's Facebook page. *See* Complaint at ¶ 33. These allegations are implausible and insufficient to state a claim under the VPPA.

Even assuming the cookies at issue contain sufficiently identifiable information (they do not), Plaintiffs' claims fail because there is no plausible allegation that Forbes disclosed their identities to a third party. Under the VPPA's plain text, there can be liability only where *the defendant* knowingly discloses PII to a third party. 18 U.S.C. § 2710(b)(1) (emphasis added). According to the Complaint itself, it is the user whose own browser sends the cookies to Facebook, not Forbes. *See* Complaint at ¶ 42.

3. **Plaintiffs Fail To Allege Forbes Knowingly Disclosed Their PII To A Third Party.**

Even if Plaintiffs had adequately alleged that Forbes disclosed PII (and that the information was actually viewed by a third party), Plaintiffs fail to adequately allege a *knowing* disclosure as required by the VPPA. To plead a "knowing" violation, a plaintiff must allege facts showing "that

10

the video-service provider *actually knew* that it was disclosing: (1) a user's identity; (2) the identity of the video material; *and* (3) the *connection* between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *See In re Hulu Priv. Litig.*, 86 F. Supp. at 1097 (emphasis added). The term "knowingly" connotes actual knowledge. *Id.* at 1095 ("'knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code"). Here, there are no well-pleaded allegations that Forbes had actual knowledge that PII was disclosed to Facebook.

## V. CONCLUSION

For all of the above reasons, Forbes moves to dismiss this action under Rule 12(b)(1) for lack of standing and/or under Rule 12(b)(6) for failure to state a cause of action.

Respectfully,
HOLLAND & KNIGHT LLP

*[signature]*

Mark S. Melodia
Hilary Lane
Sophie L. Kletzien
31 W 52nd Street
New York, NY 10019
Tel: (212) 513-3583
Fax: (212) 358-9010
mark.melodia@hklaw.com
hilary.lane@hklaw.com
sophie.kletzien@hklaw.com

*Counsel for Defendant*

cc: Counsel of Record